UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-250-RJC-DSC

| GRIFFIN FARM & LANDFILL, INC. & RICHARD S. GRIFFIN, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | ORDER |
| TOWN OF UNIONVILLE, | ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** comes before the Court on Defendant Unionville's ("Defendant") Motion for Summary Judgment. (Doc. No. 21). This is the second time these parties have appeared before this Court in distinct lawsuits.[1] The Court is once again asked to resolve by summary disposition the dispute arising from the plaintiffs' use, and intended use, of their property for landfill purposes and the town's permission, or lack thereof, to do so. For the reasons below, the Court again grants judgment as a matter of law for defendant Unionville. But in doing so, the Court disposes only of Plaintiffs' legal remedies, and leaves unaddressed - as being beyond the scope of this Court's authority - Unionville's discretionary denial. It appears the rancor between this town and its long time resident, Mr. Richard Griffin, like the detritus around which this lawsuit swirls, will persist.

**I.      BACKGROUND**

Plaintiffs Richard Griffin ("Griffin") and Griffin Farm & Landfill, Inc. ("Griffin Farm," collectively "Plaintiffs") own land in Unionville, Union County, North Carolina. Plaintiffs claim

---

[1] The parties' recycled contentions bring the Court a feeling of "deja vu all over again," See, Berra, Yogi, "The Yogi Book," (New York: Workman Publishing), p. 30

they began operating Construction and Demolition ("C&D") and Land Clearing and Inert Debris ("LCID") landfills in 1992 after obtaining indefinite zoning approval from Union County.[2] (Doc. No. 27 at 1). A C&D landfill may collect any solid waste resulting from construction, repair, remodeling, or demolition of pavement or buildings. N.C. GEN. STAT. § 130A-290(a)(4). An LCID landfill may collect only stumps, limbs, leaves, concrete, brick, untreated wood, asphalt, and uncontaminated earth, sand, and rocks. 15A NCAC 13B .0101(22). Plaintiffs allege that the State of North Carolina added new permitting requirements in 1995, at which time they obtained a state permit. Plaintiffs' tract of land is large and, as Griffin Farm's name suggests, Plaintiffs have regularly performed non-landfill operations on the property.

Plaintiffs contend that, in 1997, Union County unilaterally changed its policy on landfill zoning, scrapped Plaintiffs' previous indefinite zoning approval, and began requiring special use permits for landfills. Union County issued a Special Use Permit ("SUP") granting final zoning approval to operate both types of landfills. Unionville was incorporated as a town the following year, in 1998. In 2004, the State required Plaintiffs to obtain a franchise from Unionville in order to renew their state permit to operate the C&D landfill. At Plaintiffs' request, Unionville enacted a franchise ordinance and granted Plaintiffs a five-year franchise to operate a C&D landfill on their property on February 9, 2004. (Doc. No. 23-5). The State then issued a permit effective February 9, 2004 to operate both types of landfills. The franchise and state permit were each set to expire on February 9, 2009.

Plaintiff also requested permission to operate an industrial solid waste landfill from Unionville, but the town denied the request. This denial was the subject of a previous lawsuit

---

[2] Plaintiff argues that these are modern titles that did not exist in 1992, but that his landfill collected waste that would now be collectible in these types of landfills.

before this Court. Griffin v. Town of Unionville, NC, No. 3:05-cv-514, affirmed by 338 F. App'x 320, 324 (4th Cir. 2009) ("Griffin I"). This Court dismissed Plaintiffs' claim to a vested right to operate an industrial solid waste landfill and the Fourth Circuit affirmed. Id.

Plaintiffs stopped accepting C&D waste on June 30, 2008 rather than comply with new state regulations governing C&D landfills. With the expiration of the C&D franchise and permit approaching, Plaintiffs requested renewal from Unionville in December 2008. Plaintiffs formally filed on January 15, 2009 and the town held a public hearing the next day on January 16, 2009. (Doc. No. 23-7: Town Meeting Minutes at 19). The Defendant considered Plaintiffs' application at each of its next three regular meetings. (Id. at 19-20). On April 20, 2009, Defendant decided not to renew Plaintiffs' franchise in light of Plaintiffs' neglect of the landfill, refusal to comply with new regulations, and history of state violations. (Id. at 20). This suit followed.

Plaintiffs made another franchise application in 2011 to expand their landfill operations over their entire 188-acre property. Defendant denied this application on January 16, 2012. Plaintiff amended its complaint on March 5, 2012 to add this denial. (Doc. No. 16).

Throughout Plaintiffs' complaint, amended complaint, and briefing, they make reference to approval for their LCID landfill. (Doc. Nos. 1-1 at 2-4; 16). However, at the summary judgment hearing, both parties agreed that this litigation only concerns Defendant's denials of franchises to operate C&D landfills on April 20, 2009 and January 16, 2012.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury

3

could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

Plaintiffs contend: (1) Defendant violated their North Carolina common law vested right to operate a C&D landfill; (2) Defendant violated their North Carolina statutory vested right to

4

operate a C&D landfill; (3) Defendant's franchise denials were takings under the Federal and North Carolina Constitutions; and (4) an inverse condemnation action under North Carolina law. "As a general proposition the adoption of a zoning ordinance does not confer upon citizens any vested rights to have the ordinance remain forever in force, inviolate and unchanged. North Carolina does, however, recognize two methods for a landowner to establish a vested right in a zoning ordinance: (1) qualify with relevant statutes; or (2) qualify under the common law. Browning-Ferris Indus. of S. Atl., Inc. v. Guilford Cnty. Bd. of Adjustment, 484 S.E. 2d 411, 414 (1997).

    A.  Common Law Vested Right

"Under North Carolina law, whether Griffin possessed a vested right to a franchise for [a C&D] landfill turns on whether (1) he has made substantial expenditures; (2) the expenditures were made in good faith; (3) the expenditures were made in reasonable reliance on and after the issuance of valid governmental approval; and (4) he would be harmed by a change in governmental requirements." Griffin v. Town of Unionville, NC, 338 F. App'x 320, 324 (4th Cir. 2009). Plaintiffs' claim fails the third requirement. "Where multiple permits or governmental approvals are required for a project, a landowner has no vested right to complete that project unless he makes his substantial expenditures in good faith reliance on and *after receiving* all requisite permits or other required approvals." Id. at 325 (citing PNE AOA Media, LLC v. Jackson Cnty., 554 S.E.2d 657, 663 (N.C. Ct. App. 2001)). "Although arguably overkill, three authorizations are required to construct and operate [a C&D] landfill: local zoning approval, a local government franchise, and a permit from the State of North Carolina." Id. (citing N.C. GEN. STAT. § 130A-294(b1)(3)&(4)). These are not new requirements. At least as early as July 1, 1991, the State required C&D waste to be disposed of in landfills possessing a

5

permit for collecting such waste. 1991 North Carolina Laws Ch. 537 (H.B. 1131). The State began requiring permit applicants to first obtain a franchise from their local government on July 7, 1994. 1994 North Carolina Laws Ch. 722 (H.B. 1973).

Plaintiffs claim a 1992 indefinite zoning approval from Union County, but have not produced any evidence memorializing this approval. But see (Doc. No. 27: Griffin Aff. at 1) (testifying that Plaintiffs obtained such a permit in August 1992). Plaintiffs obtained their first state permit to operate a landfill in 1995. (Id.). Union County's zoning board granted Plaintiffs a Special Use Permit ("SUP") on November 3, 1997 to use their land for a C&D landfill. (Doc. No. 23-6 at 1). Plaintiffs obtained their first franchise agreement to operate a C&D landfill on February 9, 2004. (Doc. No. 23-5). North Carolina neglected to enforce this franchise requirement against Plaintiffs until that point in time. North Carolina renewed Plaintiffs' state permit effective February 9, 2004 after they obtained their franchise. However, North Carolina law requires permit holders to renew their permits every five years. 15A NCAC 13B .201(g). Likewise, Unionville's franchise agreement lasted only five years. (Doc. No. 23-5 at 14). Both expired on February 9, 2009. (Id. at 10, 14). The SUP was potentially indefinite and would only expire if Plaintiff ceased landfill operations for one year. (Doc. No. 23-13 at 13). Plaintiffs ceased accepting new C&D waste on June 30, 2008. The parties dispute whether this constituted a cessation of operations such that Plaintiffs' SUP would have expired on June 30, 2009. Plaintiffs applied for a new five-year franchise in December 2008. Unionville denied Plaintiffs' application on April 20, 2009. Plaintiffs reapplied in 2011, but Defendant again denied Plaintiffs' franchise application on January 16, 2012.

Plaintiffs no longer held a valid state permit or franchise agreement on either date. For these reasons alone, Plaintiffs had no vested right to a new franchise agreement. Moreover,

6

"[t]he terms and conditions upon which [a franchise is] to be granted, unless clearly unreasonable or expressly prohibited by law, rest[s] in the sound discretion of the local Board. . . . [C]ourts, in the absence of fraud or a palpable abuse of discretion, have no power to control [the Board's] action." Mullen v. Town of Louisburg, 33 S.E.2d 484, 488 (N.C. 1945). Plaintiffs had no vested right to a franchise.

Plaintiffs admitted during the summary judgment hearing that their claim was meritless if their purported vested right was dependent upon a showing of franchise, zoning, and permit approval. Instead, they claim that their right vested in 1992, before a landfill operator was required to hold all three approvals. Plaintiffs argue that they had the only government approval necessary to operate a C&D landfill: indefinite local zoning approval obtained from Union County in 1992. (Doc. No. 26 at 7).

This argument fails for two reasons. First, Plaintiffs have failed to present sufficient evidence of this purported indefinite zoning approval. Secondly, Plaintiff does not claim to have held a state permit until 1995 even though C&D landfills were required to hold permits at least as early as 1991. By 1995, C&D landfill operators were required to also hold franchises. 1994 North Carolina Laws Ch. 722 (H.B. 1973). Plaintiffs did not obtain this third approval until 2004. Therefore, even under their own theory of the case, the only time Plaintiffs held all the required government approvals to operate a C&D landfill was between February 9, 2004 and February 9, 2009. Unionville did not disturb Plaintiffs' right to operate the landfill during that time. Unionville's denial of a new five-year right to operate a C&D landfill in April 2009 did not violate Plaintiffs' rights.

Plaintiffs also argue that Defendant should be estopped from denying a new franchise because Plaintiffs incurred expenses in reliance on indications from Unionville officials that the

franchise would be extended. (Doc. No. 26 at 8). The North Carolina Court of Appeals invoked this doctrine in County of Wake v. Department of Environment & Natural Resources, 573 S.E. 2d 572, 583 (N.C. Ct. App. 2002). There, the Town of Holly Springs took repeated official action over a period of six years to assure the would-be landfill operator that it could operate the requested landfill before reversing course.

In contrast, Griffin testified that Unionville officials privately assured him that they "did not want to close the landfill but people who had recently moved into the area around the landfill were opposing its existence." (Doc. No. 27 at 3). Plaintiffs fail to point the Court to any evidence beyond this account. Griffin's testimony shows that the officials warned him that while they may have wanted to renew Plaintiffs' franchise, public opposition could prevent them from doing so. Griffin understood this possibility, testifying further that he "was concerned that this public pressure might jeopardize [his] franchise extension" so he decided not to expend resources complying with new C&D regulations "until [he] got the franchise extension." (Id.). Also, Plaintiffs concede in their response brief that there was a great deal of uncertainty as to whether the franchise would be renewed. (Doc. No. 26 at 4).

In holding that equitable estoppel prevented the town from invoking the franchise requirement as a reason to derail the landfill, the County of Wake court recognized that "[a]s a general rule, the doctrine of equitable estoppel is not applicable to municipal corporations in matters pertaining to governmental functions." 573 S.E. 2d at 583. Plaintiffs' claim is not the kind of "exceptional case" that justifies invoking the doctrine of equitable estoppel.

      B.    Statutory Vested Right

Plaintiffs also did not have a statutory vested right under North Carolina General Statutes Section 160A-385.1. Plaintiffs argue that they had a statutory right to develop their land as a

C&D landfill and that Defendant's refusal to renew Plaintiffs' franchise violated this right. (Doc. No. 1-1 at 4). Section 160A-285.1 precludes local zoning action that would impair someone's rights in certain circumstances. But this section does not limit a local government's discretion to grant or deny a franchise. Plaintiffs' claim to a statutory vested right must be dismissed.

Also, when applicable, the right only remains vested for two years after a city approves a zoning permit. N.C. GEN. STAT. § 160A-385.1(d)(1). Here, if Plaintiffs ever attained a statutory vested right it would have expired either two years after Griffin received his initial SUP in 1997 or two years after he first received a franchise in 2004. In either case, the purported right expired before the Defendant's 2009 and 2012 franchise denials. Plaintiffs' claim to a statutory vested right must be dismissed.

### C. Taking

"The Takings Clause of the Fifth Amendment . . . prohibits the government from taking private property for public use without just compensation. The clearest sort of taking occurs when the government encroaches upon or occupies private land for its own proposed use. . . . In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), the Court recognized that there will be instances when government actions do not encroach upon or occupy the property yet still affect and limit its use to such an extent that a taking occurs. In Justice Holmes' well-known, if less than self-defining, formulation, 'while property may be regulated to a certain extent, if a regulation goes too far it will be recognized as a taking.'" Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (quoting Pennsylvania Coal, 260 U.S. at 415). Since Pennsylvania Coal, the Supreme Court has held that such a regulation which "denies all economically beneficial or productive use of land will require compensation under the Takings Clause." Id. But Plaintiff

9

does not contend that Defendant's actions deprived his land of "all economically viable use." See (Doc. No. 23-15: Griffin Dep. at 10) (valuing Plaintiffs' 188-acre property at $12,000 per acre–or a total of $2,256,000–for non-landfill purposes).

"Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including [1] the regulation's economic effect on the landowner, [2] the extent to which the regulation interferes with reasonable investment-backed expectations, and [3] the character of the government action. These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Id. (citing Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978)). A regulation, such as the one Plaintiffs challenge, which "bans certain private uses of a portion of an owner's property" is not a categorical taking and must instead be analyzed under the above Penn Central factors. Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Reg. Planning Agency, 535 U.S. 302, 323 (2002).

1.  Ripeness

Courts must frequently reject takings claims as premature. "[A] takings claim challenging the application of land-use regulations is not ripe unless the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Palazzolo v. Rhode Island, 533 U.S. 606, 618, (2001). Also, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson County Reg'l Planning Comm'n v.

Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985). Plaintiffs "may only seek such compensation by commencing an inverse condemnation proceeding." Town of Nags Head v. Toloczko, No. 2:11-cv-1, 2012 WL 1059850, at *13 (E.D.N.C. Mar. 28, 2012) (citing N.C. GEN. STAT. § 40A-51).

Plaintiffs' takings claim is ripe. Defendant has denied two C&D franchise applications. Neither party has shown any other process available to Plaintiffs to appeal this decision or any other type of application Plaintiffs should have made to the franchise board. As to compensation, Plaintiffs brought this action in North Carolina Superior Court as an inverse condemnation proceeding in an effort to seek such just compensation. The State then removed the action to this Court. Thus, Plaintiffs' takings claim is ripe for this Court's review.

2. Merits

"The analysis in a takings case necessarily begins with determining whether the government's action actually interfered with the landowner's antecedent bundle of rights. If . . . there was no interference with this bundle of rights, there is no taking." Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 330 (4th Cir. 2005); see also Henry v. Jefferson Cnty. Comm'n, 637 F.3d 269, 275 (4th Cir. 2011) (same); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008) (finding that plaintiff's failure "to identify any property taken for public use or [to] specify a property interest taken" by government's action was alone enough to dismiss plaintiff's takings claim). In Sunrise, a developer alleged that the City of Myrtle Beach's denial of its hotel building permit application violated the Takings Clause. The Fourth Circuit denied the developer's claim because it had no antecedent right to the permit until they secured the Community Appearance Board's approval. Sunrise, 420 F.3d at 330. Likewise, the Henry court rejected a developer's Takings claim after finding that he had no "antecedent" right

to a building permit because the "issuance of such a permit is within the discretion of the Planning Commission under the ordinance." 637 F.2d at 275.

Plaintiffs similarly claim that the Takings Clause requires Defendant to pay compensation for its decision to deny Plaintiffs a franchise for a C&D landfill. But as shown above, Plaintiffs had no vested property interest in operating such a landfill when Defendant denied their franchise applications. Also, a local government's decision to grant or deny such a franchise is left to the government's legislative discretion. Therefore, like the developers in Henry and Sunrise, Plaintiffs had no "antecedent" property right. For this reason alone, Plaintiffs' federal takings claim is dismissed.

Plaintiffs' lack of an antecedent property right also dooms their North Carolina Constitution takings claim. "Invocation of constitutional protection against takings without just compensation or without due process requires a property interest on the part of the person seeking such protection. Where there is no property interest, there is no entitlement to constitutional protection." State ex rel. Utilities Comm'n v. Carolina Util. Customers Ass'n, Inc., 446 S.E. 2d 332, 344 (N.C. 1994) (discussing a claim under the North Carolina Constitution).

Nonetheless, the Fourth Circuit has gone on to address the Penn Central factors in such cases. Henry, 637 F.3d at 276; Laurel Sand, 519 F.3d at 165. But see Sunrise, 420 F.3d at 330 (relying on lack of antecedent property right alone to dismiss takings claim). In Henry, the Fourth Circuit cautioned that it was "reluctant to push the notion that the denial of a permit in which one has no property interest can somehow amount to an unconstitutional taking" before addressing the Penn Central factors. Id. The Fourth Circuit then rejected the developer's claim under the Penn Central analysis. Id. After noting that the developer had presented some evidence of an adverse economic effect on his land, the court held that "[e]ven if we thought

12

diminution in value cut in Henry's favor, the other Penn Central factors make clear that Henry suffered no compensable taking." Id. In addressing the "investment-backed expectations" factor, the court wrote that, "all of [Henry's] investment-back expectations claims are predicated on his having an entitlement. He does not. We can see absolutely no warrant for the proposition that where the government merely refuses to enhance the value of real property a compensable taking has occurred." Id. The court then rejected Henry's argument on the "character of the government action" prong, noting that "[r]egulatory takings doctrine seeks to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." Id. The Fourth Circuit held that the Planning Commission's denial was a legitimate exercise of its zoning authority and denied the developer's claim.

Plaintiffs' claim fails for the same reasons. While they have shown that their land would have been worth substantially more as a C&D landfill, the other factors cut sharply against Plaintiffs. Plaintiffs have no reasonable investment-backed expectation in another franchise to operate a C&D landfill. Plaintiffs voluntarily stopped accepting C&D waste in June 2008 rather than comply with new regulations. Plaintiffs also allowed their state license and previous franchise to expire. Their documented history of violations should have also alerted Plaintiffs to the possibility that their franchise to operate the landfill might not be renewed. Plaintiffs were not entitled to have the government increase the value of their property yet again. The character of Defendant's decision also cuts against Plaintiffs. After a formal review process, which included a public hearing, the Defendant considered Plaintiffs' application at each of its next three regular meetings. On April 20, 2009, Defendant decided not to renew Plaintiffs' franchise because of Plaintiffs' neglect of the landfill, refusal to comply with new regulations, and history

13

of violations. (Doc. No. 23-7: Town Meeting Minutes at 20). Defendant did nothing like a classical taking in rejecting Plaintiffs' application for another franchise. It did not seek him out for regulation or interrupt any ongoing use of his property. Plaintiffs stopped accepting new C&D waste voluntarily in June 2008. Defendant's denial of a new franchise to resume such operations a year later was not a taking.

Plaintiffs argue that because they were previously permitted to use their land as a C&D landfill, Defendant's refusal to allow Plaintiffs to continue that use is automatically a taking. First, Plaintiffs were no longer using their land as a C&D landfill when they applied for a new franchise. Second, this fact does not change the above analysis. The Supreme Court has rejected takings claims where "the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted." Penn Central, 438 U.S. at 125 (citing Miller v. Schoene, 276 U.S. 272 (1928)). Plaintiffs' takings claims are dismissed.

## IV. CONCLUSION

Plaintiffs did not have a common law or statutory vested right to operate a C&D landfill after February 2009. Therefore, Unionville's denials of new franchises to operate a C&D landfill in 2009 and 2012 did not infringe upon any vested right or amount to a taking under either the North Carolina or United States Constitutions. Defendant's Motion for Summary Judgment, (Doc. No. 21), is **GRANTED**.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 21), is **GRANTED**.

Signed: August 8, 2012

*Robert J. Conrad, Jr.*
Robert J. Conrad, Jr.
Chief United States District Judge